## COMMISSIONER OF INTERNAL REVE-
## NUE v. MARESI.
### No. 302, Docket 20226.

Circuit Court of Appeals, Second Circuit.

July 8, 1946.

Norman S. Altman, of Washington, D. C., Sewall Key, Act. Asst. Atty. Gen., and Helen R. Carloss, Sp. Asst. to Atty. Gen., for petitioner.

Murray F. Johnson and Harper & Matthews, all of New York City, for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The Commissioner petitions to review an order of the Tax Court—en banc, one judge dissenting—expunging a deficiency in an estate tax, assessed against the respondent, as executrix of Pompeo M. Maresi, deceased. The question is whether future payments due to the testator's divorced wife were an allowable deduction under § 812(b) (3) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 812(b) (3). The facts which are not in dispute were as follows. In 1931 Maresi, the testator, and his wife at that time, Helen G. Maresi, made an agreement of separation,

providing fixed annual sums for the wife's support during her life or until she remarried, and for the support of their three children, in consideration of which she did "relinquish, release and discharge all dower or right of dower which she may now have or might hereafter acquire in any property now owned or possessed, or which may hereafter be acquired," by the testator. She did also "release any and all rights or claims, by way of inheritance, descent or distribution which" she might then "have or upon the death of" the testator might thereafter "acquire by operation of law in any portion whatsoever of the property, both real and personal," of the testator. Shortly after the agreement she procured a Reno divorce from the testator, the decree providing: "That the support of the plaintiff, and the care, custody, control, support, maintenance and education of * * * the minor children * * * and the property rights of plaintiff and defendant be, and the same hereby are settled and decreed in accordance with the terms and provisions of the agreement between plaintiff and defendant, of date November 13, 1931; and further, the terms of the said agreement hereby fully are adopted, ratified and approved by the Court." When the testator died in 1940, Helen G. Maresi was forty-nine years old and had not remarried. The Commissioner refused to allow as a deduction from the gross estate, any credit for sums falling due under the agreement or the decree during Helen G. Maresi's continued celibacy, and the executrix, the second wife, appealed to the Tax Court, which expunged the deficiency and ordered a small refund. The Tax Court held that the claim was not "founded on a promise or agreement," but upon the decree of the divorce court, and that therefore the qualification of § 812(b), did not apply that any allowance must be limited to what was given in consideration of "money or money's worth." In order to ascertain the expectancy of continued celibacy of Helen G. Maresi, as distinct from her expectancy of life, the court made use of actuarial tables, prepared by the Casualty Actuarial Society of America, and supported by the testimony of an actuary of standing. These tables were based upon American experience as to the widows who were entitled to workmen's compensation. To them the Commissioner objected on two grounds: (1) Workingmen's widows do not form a group, sufficiently congruous with the wives of men who have larger incomes; (2) the chances of remarriage among widows are not a safe basis for inferring the chances of remarriage of divorced women. The Tax Court, although it recognized the uncertainties inevitable in any liquidation of the claim, decided that the tables were the most reliable evidence available and allowed a deduction accordingly.

We have three times decided that the words in the last paragraph of § 812 (b): "other marital rights in the decedent's property," include a wife's right to support during her husband's life. It follows that a claim based upon an agreement by which a wife relinquishes that right in consideration of sums, payable in whole or in part at or after his death, is not deductible from his gross estate. Meyer's Estate v. Commissioner, 2 Cir., 110 F.2d 367; Helvering v. United States Trust Co., 2 Cir., 111 F.2d 576; Adriance v. Higgins, 2 Cir., 113 F.2d 1013. That rule is too well settled to be disturbed; and we must therefore here decide whether, because the decree of divorce incorporated by reference the separation agreement, Helen G. Maresi's claim against the estate was "founded upon a promise or agreement." That question apparently first arose in 1939, and the Board of Tax Appeals held that, since the divorce court was free to disregard any allowances made in the separation agreement, the allowances were authentically its own, even in cases where it expressly accepted as proper the allowances actually agreed upon. Young v. Commissioner, 39 B.T.A. 230. This ruling the Board repeated in 1941 (Mason's Estate v. Commissioner, 43 B.T.A. 813); and the taxpayer asserts that it has also done so in 1940 (Ross v. Commissioner, Mem.Dec. par. 40,025) and in 1942 (Keller v. Commissioner, Mem.Dec. par. 42,094). The same result has been reached by the First Circuit (Commissioner v. State Street Trust Co., 128 F.2d 618, 142 A.L.R. 943), and twice by the Fourth (Yoke v. Fleming, 145 F.2d 472; Commissioner v. Swink, 155 F.2d 723); and there are no decisions to

the contrary. At first blush the distinction may seem a little formal, but on consideration it appears to be sound. One can of course say that a divorce decree is "founded" upon the testimony of the witnesses, and in that sense the decree of the Nevada court in the case at bar was "founded" upon the separation agreement. But it is pretty clear that that is not the sense in which § 812(b) uses the word; rather it means that the legal transaction which creates the obligation is the agreement, and in that sense the allowances are not "founded" upon the agreement but upon the command of the court. Moreover, whatever doubts might remain as an original matter, the matter is one on which the Tax Court's ruling should be highly persuasive, if not controlling, even if it were not backed up by the support of two decisions of circuit courts of appeal. For these reasons we hold that a deduction was allowable, and the only question remaining is how it should be computed.

It has for long been the custom in federal courts to use accredited actuarial tables in order to appraise the value of future interests, Simpson v. United States, 252 U.S. 547, 40 S.Ct. 367, 64 L.Ed. 709. True such tables will not be competent, when the circumstances at bar are too far afield from the experience which the tables record and on which their forecasts are made (Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Robinette v. Helvering, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700); and we shall assume arguendo, that if it here appeared that the tables were based upon experience, plainly too remote, a point of law would emerge which we should be called upon to notice. It must be remembered however that all actuarial tables tell us only how many individuals of a group defined by a given set of characteristics, have an added characteristic; and their applicability to the member of a group, defined by other characteristics, depends of course upon how far the differentia can be thought to disturb the probability. To be specific, the question at bar is how far the probability of Helen G. Maresi's remarriage in 1940 would be affected by the fact that the women recorded in the tables were widowed rather than divorced,

and had been wives of men of small, rather than ample, incomes. So far as one can tell, both these factors weighed against the taxpayer in the case at bar and in favor of the Treasury. Helen G. Maresi had already remained unmarried eight years, when her former husband died, and she was certainly more likely to continue unmarried longer than a woman of her age just widowed. Again, although she enjoyed an income much in excess of workmen's compensation, it would stop upon her remarriage; and the greater the forfeit, the greater the inducement to remain single. So much for the factor that she would accept an offer of marriage, if one were made to her. As for the probability that such an offer would be made, we cannot see any reason to assume that it was more likely to be made to a divorced woman of forty-nine, enjoying a substantial income which she would lose if she accepted the offer, than to a widow of the same age who had been more slenderly endowed. One might reasonably believe that here too the odds favor the widow. In any event there was no sufficient reason to reject the tables; if anyone suffered, the chances are that it was the taxpayer.

We are dealing with speculation as to the future on a subject which at best admits of no accurate determination. That is quite as true of longevity itself as of continued celibacy; the only difference is that as to the second there is one added factor of uncertainty. The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow. It is true that in earlier times the law preferred inaction to uncertainty, being sensitive to all that disturbed possession; although the certainty with which it was satisfied, was even then factitious in numberless situations which had no more than the sanction of custom. However, although the demand for certainty has become less exacting, we agree that there is still a limit; indeed, Robinette v. Helvering, supra, 318 U.S. 184, 63 S.Ct. 540, 87 L.Ed. 700, is authoritative to the contrary. But upon an issue so insusceptible of accurate treatment, it appears to us that the choice of what may be relied upon should be even more than ordinarily in the hands of the Tax Court.

Faced with a problem which demands some solution and should not be put off by evasion, it has adopted the most practicable means. The disparity of that means with an ideal would have to be far greater than in fact it is, before we should be willing to deny the propriety of its use.

Order affirmed.