OPINION. Black, Judge: In computing decedent’s gift tax on the December 13,1951, transfers in trust of Hotel Company and Garage Company stock, petitioners calculated the value of each beneficiary’s right to income from that trust on the basis of the life expectancy of such beneficiary (see Eegs. 108, sec. 86.19 (g), Table A, column 2), and applied the statutory annual exclusion[1] to the figure thus arrived at for each beneficiary. Eespondent disallowed the claimed exclusions. Section 1003 (b) (3) provides that gifts of present interests are ex-cludible to the extent of $3,000 per donee in determining taxable gifts for any calendar year after 1942. Eespondent concedes that the beneficiaries’ rights to income from the trust constituted gifts of present interests. He contends, however, that the statutory exclusions are inapplicable becausé those present interests are incapable of valuation. The issue thus presented is whether our decisions in Sylvia H. Evans, 17 T. C. 206, affd. (C. A. 3) 198 F. 2d 435, and Jennie Brody, 19 T. C. 126, are (as respondent maintains) applicable to the facts of the instant case. We think they are. In Evans, supra, the settlor established a separate trust for each of her children, giving the beneficiary of each trust income therefrom for life and giving the trustees uncontrolled discretion to distribute corpus to the beneficiary for his (or his spouse’s or children’s) education, comfort, and support. In Brody, supra, the settlors established a separate trust for each child and grandchild giving the beneficiary of each trust income therefrom for life and corpus on a specified distribution date, but providing that the trustees may, in their uncontrolled discretion, distribute the corpus to the beneficiary prior to the specified distribution date. In both cases we held that the statutory exclusion for gifts, of present interests was inapplicable because each beneficiary’s right to income, although a present interest, was incapable of valuation since the trustees could, in their uncontrolled discretion, terminate that right at any time by accelerating the gift of corpus, and that this result must follow even though it was the income beneficiaries themselves who were the designated recipients of any accelerated corpus. The issue here is one of valuation, i. e., whether petitioners have reasonably proved the value of the gifts of income — which they must do in order to establish, the amount of the statutory exclusion to which the donor is entitled. As the Court of Appeals for the Eighth Circuit said in affirming our opinion in William Harry Kniep, 9 T. C. 943, affd. (C. A. 8) 172 F. 2d 755, which case we relied on in Evans and Brody, both supra: The taxpayer has the burden of proving not only his right to the claimed exclusion, but also the amount of it. * * * The insuperable difficulty with which the petitioner is confronted is that it is impossible for him to prove that the principal of the trust estate, and thus the income from it, will not be decreased by the.exercise of the discretionary power of invasion granted to the trustees; or to prove the amount by which the principal, upon which the present worth of the right to receive income must be computed, may be reduced by the exercise of the trustees’ power of invasion. See also Willis D. Wood, 16 T. C. 962, 967. In the instant case distribution of the corpus of decedent’s December 13,1951, inter vivos trust could be accelerated to the income beneficiaries (and their rights to income thus expunged) by termination of the trust upon motion of a majority in interest of those beneficiaries. The fact that the power of acceleration was in the beneficiaries, rather than the trustees, is a distinction from the above-cited cases which, if anything, strengthens respondent’s conclusion. See Willis D. Wood, supra. However, petitioners argue that this case must be distinguished from those we have cited because here the beneficiaries’ power of termination was not exercisable unless and until the trust under the will of A. J. Casey (Patrick’s brother) disposed of the shares it held in the Hotel Company It is true that the beneficiaries’ power of termination here is conditioned upon precedent action by the A. J. Casey trust and, therefore, was not, as was the trustees’ acceleration powers in Evans and Brody, both supra, absolute or uncontrolled at the date of the gifts. In fact, as petitioners point out, the beneficiaries might never be in a position to exercise their power of termination if the A. J. Casey trust chose not to dispose of its Hotel Company stock. Those circumstances, however, do not by themselves aid petitioners. When decedent made, her gifts in trust there was no restriction on the right of the A. J. Casey trust to dispose of the Hotel Company stock it held. It was free to do so at any time, either alone or in conjunction with a sale of the Hotel Company shares held in decedent’s trust. Petitioners have not shown us, nor are we aware of, any recognized method of evaluating the chances that such a sale would not take place. Robinette v. Helvering, 318 U. S. 184. The instant case is not like Commissioner v. Maresi, (C. A. 2) 156 F. 2d 929, affirming 6 T. C. 582, cited by petitioners, where it was held that the possibility of a divorced wife remarrying could be gauged by accredited actuarial tables. We are here referred to no such index of probabilities nor to any other evidence bearing on the chance of sale. ' For all we know the A. J. Casey trust could have, and might yet, sell its Hotel Company stock at any moment, and immediate termination of decedent’s trust could follow on the heels of such a sale, thus canceling the income rights of the beneficiaries thereunder. We must hold, therefore, that although the income rights of the beneficiaries of decedent’s trust were present interests, they were, just as in Evans and Brody, both supra, incapable of valuation and, consequently, the statutory exclusion is inapplicable to them. We are aware, as petitioners point out, that section 2503 (b) of the 1954 Code provides for a different result in cases such as this where the same persons are the beneficiaries of both the income and any accelerated corpus. But that section is applicable only to gifts made after 1954 and has no bearing upon the facts of the instant case. The final issue for our determination is whether decedent’s December 13, 1951, transfers in trust of the Hotel Company and Garage Company shares were made in contemplation of death, with the result that those shares are includible in her gross estate for Federal estate tax purposes. Sec. 811 (c) (1) (A), (1), 1939 Code;[2] Regs. 105, sec. 81.16. The principles applicable to the resolution of this question are stated in United States v. Wells, 283 U. S. 102, as follows: The words “in contemplation of death” mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to. be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is “near at hand.” If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * * * * There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute. * * * [Transfers are not made in contemplation of death if] the motive for the transfers brought them within the category of those which, * * * are intended, by the donor “to accomplish some purpose desirable to him if he continues to live.” * * * [Emphasis added.] Resort to decided cases is of little value since determining a decedent’s “dominant, controlling or impelling motive is a question of fact in each case.” Allen v. Trust Co. of Georgia, 326 U. S. 630. We have found as a fact that the transfers here in issue were not made in contemplation of death. In our findings we have carefully set forth all of the pertinent data in evidence bearing upon that ultimate factual finding. At first blush it would appear that the transfers were made in contemplation of death. Decedent suffered a severe heart attack on December 12,1951, and the facts clearly indicate that she then knew death was not very far away. On December 13, she executed the. trust instrument of transfer and 4 weeks later, on January 9, 1952, she died. But this is only part of the story. Decedent acquired the subject of the gifts, i. e., the Hotel Company and Garage Company shares, in 1941 as partial settlement of a claim she held against her husband’s estate for money which she had loaned him. Her husband actually intended those shares to pass to a trust established under his will and, realizing this, decedent wished to renounce her claim and give up her right to the shares. However, some of decedent’s children, who in fact were beneficiaries of the testamentary trust established by her husband, advised her against either renouncing the claim or making an immediate gratuitous re-transfer of the shares to the testamentary trust because of possible adverse income or estate tax consequences to her husband’s estate. At all times decedent stood ready and willing to transfer the shares to her husband’s testamentry trust whenever her children said that such a transfer would be advisable. Her son Laurence felt that there was no particular need to rush such a transfer and, in fact, her children initially lost nothing by the failure of such a transfer since the shares produced no dividends until 1947. The transfers were also delayed by the fact that from 1942-1946 three of her sons were in military service and therefore could not partake in discussions regarding the disposition of the shares. When dividends were paid on the shares, in 1947 and thereafter, decedent was even more concerned about her retention of the shares and wished her children to have the benefit of that income. The record certainly supports the conclusion that the dividend income was not needed by her at all; she was given a $15,000 a year annuity under her husband’s testamentary trust and, in fact, her income from all sources other than those dividends exceeded $21,000 in each year 1947 through 1950. Life motives impelling her to transfer the shares were, in addition to the desires to carry out her husband’s testamentary intention and to give her children the benefit of the dividend income, the wish to stabilize her family’s position in the Hotel Company by providing for unified voting control and the wish to assure unity and cooperation both among her children and between them and A. J. Casey’s heirs. Continued harmony and cooperation between the Patrick and Á. J. Casey families was also one of her husband’s testamentary desires. In 1947, decedent suffered a stroke which paralyzed her right side and compelled her to remain in a bed or wheelchair, with a registered nurse in constant attendance, until her death. We think it an important fact that this precipitated no rush to effectuate transfers of the shares. During the winter of 1950-1951, decedent’s son Joseph, who derived his income from executive employment in the Hotel Company and wished to stabilize the family’s position therein, urged Laurence to formulate a plan for decedent to transfer the shares. This was done and decedent approved the suggestion that the shares be transferred to an inter vivos trust to be established by her rather than to the testamentary trust set up by her husband in his will. For various reasons, none of which relate at all to decedent, who never did anything to delay the preparation or execution of the inter vivos trust instrument, the final draft of that instrument was not ready until December 6, 1951. On that date decedent approved it. Preparation of the documents for her signature "were completed on the afternoon of December 12, before she had her heart attack. Were an analysis made at this point, we think the conclusion would be inescapable that the motives impelling decedent’s transfers were those life motives which we have mentioned above. The question is, therefore, did the intervention of decedent’s severe heart attack prior to her actually signing the trust instrument on December 13, and her knowledge that death was not very far away, result in a change of motives for the transfers so that, at the time of signature of the trust instrument, such motives were testamentary? We think not. As stated in United States v. Wells, supra, “apprehension that death is ‘near at hand’ ” does not by itself compel the conclusion that the transfer was in contemplation of death. For years decedent wished to make transfers of this nature solely for life motives and was prevented from, doing so only by advice of her children, the intended donees. She was ready and willing to make the transfers whenever her children gave the .word, and were she in perfect health on December 13, rather than severely ill, we have no doubt that she woidd have unhesitatingly completed the transfers, the substance of which was approved by her on December 6. Under these circumstances we are convinced, to paraphrase United States v. Wells, supra,. that the transfers were intended by the donor to accomplish purposes desirable to her if she continued to live and, therefore, that they were not made in contemplation of death. For reasons heretofore stated, Decisions will be entered imder Bule 50. SEC. 1003. NET GIFTS. (b) Exclusions from Gifts.— • **•**• (3) Gifts after 1942. — In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person, shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year. SEC.-811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by Including the value at the time of his death of all property, real or personal, tangible or Intangible, wherever situated, except real property situated outside of the United States— (c) Transfers in Contemplation of, or Taking Effect at, Death.— (1) General rule. — To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise— (A) in contemplation of his death; * * * ******* (1) Contemplation of Death. — If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth) transferred an interest in property, * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d) and (Í) ; but no such transfer * * * made prior to such three-year period shall be deemed or held to have been made in contemplation of death.