## Tench Estate

Before Boyle, P. J., Rahauser, McKenna and Van der Voort, J. J.

*John M. Duff* and *Donetta W. Ambrose*, for Commonwealth.

*Frank Mast* and *Charles M. Thorp, 3rd,* for appellants.

BOYLE, P. J., May 29, 1973.—The question to be determined in this audit is the validity of the protest filed by the executor against the appraisement by the Commonwealth of the value of an account receivable, for transfer inheritance tax purposes. Counsel for the Commonwealth and the executor have stipulated of record that the value of the asset is $99,500 at the date of death of decedent, without giving consideration to federal income taxes which must be paid when future installments on the account receivable become due. The executor contends that the appraised value of $99,500 should be further reduced to $76,800 by a deduction of $22,700 by reason of the deferred federal income taxes which, it is agreed, must be paid by the beneficiaries of the estate. The executor contends that this federal income tax obligation is a present encumbrance on this asset warranting the deduction. The Commonwealth agrees that the discount of $22,700 is fair if the executor's position is legally valid. The Commonwealth, however, challenges the legal validity of the executor's contention, asserting that the claimed deduction is purely speculative, hypothetical and not allowable under the provisions of the Inheritance and Estate Tax Act of 1961.

Decedent died on January 19, 1971, and letters testamentary on his estate were granted to the widow, Mary Grace Tench and Mellon National Bank on January 27, 1971. An inventory was filed on June 21, 1971, in which the account receivable is valued at $101,432.44, now valued at $99,500 as per stipulation filed. A protest against the appraisement of the account receivable was filed in the office of the register of wills on November 12, 1971.

On February 16, 1973, in the audit of the executor's

first and partial account, the parties filed a "Stipulation of Fact" which, in pertinent part, is as follows:

"Appellant and appellee by their respective attorneys of record do hereby stipulate and agree that for the purpose of this proceeding the following facts shall be taken as true, reserving the right to introduce additional and further evidence not inconsistent therewith:

". . .

"2. As of his date of death the decedent owned a 33% interest (Note: exactly 33%, not a ⅓ interest) in TST Associates (TST), a partnership.

"3. TST performed services for White Consolidated Industries, Inc. (White) in consideration for which White agreed to pay a finder's fee of $420,000 to TST in seven equal annual installments of $60,000 on May 15, 1971 and on the next six anniversary dates thereafter. Unpaid balances bear no interest. The receivable is not represented by an evidence of indebtedness other than the contract, and no assets have been pledged to secure payment.

"4. As of the decedent's date of death, the only two assets owned by TST were cash in the amount of $836.50 and the receivable due from White in the face amount of $420,000. It had no liabilities.

"5. The value of the decedent's 33% interest in TST as of his date of death was $99,776.04 (Cash: $276.04; White receivable: $99,500), without taking into consideration any discount in such value which might be allowed because all amounts which will be paid to the estate by White in liquidating the obligation ($138,600) will be subject in their entirety to federal income tax liability upon receipt by the estate and its transferees, the item being income in respect of a decedent, as defined at 26 USC, sec. 691.

"6. The question presented to the court is whether or not, as a matter of law, the value otherwise agreed

upon of $99,500 is subject to further discount because the receipt of payments in liquidation of this receivable will carry with it a concomitant liability for federal income tax.

"7. Should the court find such discount allowable the amount of the discount for the deferred federal tax would be $22,700, thus reducing the value of the receivable to $76,800.

Respectfully submitted,

| | |
|---|---|
| / s / John M. Duff | /s/ Frank Mast |
| Deputy Attorney General | Frank Mast |
| / s / Donetta W. Ambrose | /s/ Charles M. Thorp III |
| Assistant Attorney General | Charles M. Thorp, III |
| Attorneys for Appellee | /s/ Thorp, Reed & Armstrong |
| | Thorp, Reed & Armstrong |
| | Attorneys for Appellant" |

Decedent was always on a cash accounting basis in the filing of his federal income tax returns as distinguished from a taxpayer who files his federal income tax returns on an accrued income basis. It is the bookkeeping method of decedent which generates the question before the court. Had this decedent kept his books and reported his income on the accrual basis, there would be no doubt about the right of the executors to a deduction, for transfer and inheritance tax purposes, of the amount of federal income tax due from the estate on the sum of $99,500, the value of the receivable as stipulated. On the accrual basis, the federal income tax on the receivable would have been the direct obligation of the decedent and, therefore, of his estate.

It is to be noted that the account receivable in question will not escape Federal income tax merely because it was not includable in any income tax return filed

by decedent. Section 691 of the Internal Revenue Code requires that items not taxable to the decedent ("income in respect of decedents") under the foregoing rules are taxable to whomever receives them: 26 U. S. C. §691, 68 A. Stat. 235, as amended.

The usual tax basis for computing gain or loss on the disposition of property acquired from a decedent is the fair market value at the time of death: 26 U. S. C. §1014. The rule does not apply, however, to items of "income in respect of a decedent." Such items of income are taxable to the estate of decedent or its distributees when these items are liquidated for payment.

When a taxpayer, who reports his income for federal income tax purposes on a cash basis, owns an accrued right to receive income at the date of his death, his estate or its distributees, who receive payment in cash of the accrued item, are taxable on these payments just as decedent would have been had he lived. It is thus apparent that, if a Pennsylvania transfer inheritance tax is imposed on the accrued item in the case at bar without any deduction for the "built in" liability for federal income tax, the result would be the imposition of an inheritance tax upon federal income taxes.

The Commonwealth's principal objection to the allowance of any deduction for future income taxes attributable to the payment of future installments on the account receivable involved is that the amount of these taxes is necessarily hypothetical and speculative. The Commonwealth asserts that there may be some federal income tax payable by the distributees or there may be none payable, depending upon the individual tax status of distributees at the time of payment.

A case analogous to the case at bar is Sarah Helen Harrison, Petitioner, v. Commissioner of Internal Revenue, Respondent, 17 T. C. 1350 (1952), Tax Court of the United States, wherein a Federal gift tax was in-

volved. It was held that where a trustee-donee was required to pay the future income tax of the beneficiary the gross value of the gift may be reduced by the present worth of future income tax payments. Part of the court's opinion ( Johnson, J.) is apposite to the present question. At pages 1354-55 the tax court held:

"In the first issue, petitioner alleges respondent erred in disallowing the exclusion of the present worth of future income tax payments from the gross value of gifts in determining the net value of petitioner's gifts subject to gift tax. Respondent contends that the present value of petitioner's right to have her future income tax paid by the trustee may not be deducted from the gross value of the gifts to the trusts, since the value of the right could not be ascertained by recognized actuarial methods.

"By the provision in Trust No. 1, that the trustee 'shall also pay and discharge . . . , each year during the remaining lifetime of Settlor, her entire liability for Federal and State income taxes,' petitioner reserved or retained a valuable and enforceable right in this trust. Cf. Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 729. The payment of petitioner's income tax is not discretionary; but rather, as spelled out in the trust agreement, the payment is an enforceable obligation of the trustee.

"Respondent does not deny that the payment of petitioner's income tax is a retained interest, but he takes the position under the theory of Robinette v. Helvering, 318 U. S. 184, affirming 129 F. 2d 832, and 44 B. T. A. 701, that such an interest could not be ascertained by any recognized actuarial methods. It is, of course, impossible to foretell with mathematical accuracy the amount of the future Federal and state income tax payments which have to be paid under the terms of the trust agreement within the lifetime of the petitioner.

However, of a certainty, we know that some tax payments will be required. Since the adoption of the Sixteenth Amendment to the Constitution, Federal income taxes have become a permanent and growing part of our economy, and there is no likelihood that such taxes will not continue to be imposed throughout the life expectancy of petitioner.

"Even though difficult to ascertain, an estimate of petitioner's present right to have her future income tax paid should be made. We note the words of Judge Learned Hand, as expressed in Commissioner v. Maresi, 156 F. 2d 929, affirming 6 T. C. 582, wherein a Tax Court.evaluation was sustained:

" 'We are dealing with speculation as to the future on a subject which at best admits of no accurate determination. . . . The one sure way to do injustice in such cases is to allow nothing .whatever upon the excuse that we cannot tell how much to allow. It is true that in earlier times the law preferred inaction to uncertainty, being sensitive to all that disturbed possession; although the certainty with which it was satisfied, was even then factitious in numberless situations which had no more than the sanction of custom. However, although the demand for certainty has become less exacting, we agree that there is still a limit; indeed, Robinette v. Helvering, supra, 318 U. S. 184, . . . is authoritative to the contrary. . . .' "

We note particularly the sentence from Judge Learned Hand's opinion in Maresi, supra, where he wrote:

" . . . The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow."

The nature of the transfer inheritance tax is clearly and ably explained and discussed in Pennsylvania In-

heritance and Estate Tax by Grossman and Smith (1966) at pages 87-8.

Section 401 of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485—101, et seq., provides:

"When the decedent was a resident, the tax shall be computed upon the value of the property, in excess of the deductions hereinafter specified, at the rates in effect at the transferor's death. 1961, June 15, P. L. 373, Art. IV. §401."

Under section 401 the tax is required to be computed upon the "value" of the property at the transferor's death.

The term "value" as used in the Inheritance and Estate Tax Act of 1961 is defined in section 2485-102-(24) of the act as follows:

"(24) 'Value' means the price at which the property would be sold by a willing seller, not compelled to sell, to a willing buyer, not compelled to buy, both of whom have reasonable knowledge of the relevant facts. 1961, June 15, P. L. 373, Art. I, §102; 1963, July 26, P. L. 325, §§1, 2."

The Federal income tax obligation due on the account receivable of decedent carries over to the beneficiaries of his estate solely by reason of the fact that decedent reported his income on a cash basis for income tax purposes. All of the Federal income tax liability generated by the unpaid amount of the account receivable is attributable in this sense to the decedent. The income tax obligation is implicit in the account receivable. It is an encumbrance upon it in the same manner that a mortgage would be an encumbrance on real property. In arriving at the "value" of any property of a decedent for transfer inheritance tax purposes the inherent charges against the property must be given effect.

In the case at bar, the parties have filed of record a stipulation that a fair discount, attributable to federal income tax liability, for consideration in determining the "value" of the account receivable for transfer inheritance tax purposes is $22,700. This discount reduces the "value" of the account receivable from $99,500 to $76,800.

The auditing judge holds that there is no legally sufficient objection which bars the allowance of the claimed discount.

The protest filed against the appraisement made by the Commonwealth of the account receivable will be sustained.

The appraised value of the account receivable for transfer inheritance tax purposes will be reduced from $99,500 to $76,800.

A decree will be entered in accordance with this opinion.

## CONCURRING OPINION

VAN DER VOORT, J., June 15, 1973.—An asset in this estate is a share of a finder's fee payable in six future installments totaling $99,500. This asset, being ordinary income, carries with it a liability which will now fall upon the legatees to pay income tax as the installments are received by them.

The Commonwealth claims that inheritance tax must be paid on the total sum of $99,500, whereas the actual value of this asset in the hands of the legatees is $22,700 less than the total amount of the installments. This figure was agreed to by stipulation to avoid a lengthy hearing upon what the precise amount of income tax would be paid by the legatees. To require the beneficiaries of an estate to pay a six percent inher-

itance tax on the money which they must pay to the federal government would not seem to be in keeping with equitable rules of taxation.

For this reason, I concur in the opinion of Boyle, P. J.