**Ginsberg Estate**

*Fox, Rothschild, O'Brien & Frankel,* by *Robert P. Frankel,* and *Charles M. Solomon,* for accountants.

*Catherine R. Barone*, Assistant Attorney General, for Commonwealth.

TAXIS, P. J., November 1, 1973.—The first and final account of Sidney V. Steinberg and Charles M. Solomon, executors, was examined and audited by the court on May 7, 1973. Continued audit and hearing was held on July 13, 1973, and argument was held on September 10, 1973.

The account shows a net balance of principal and income for distribution of $27,409, composed of 200 shares Strongwear Hosiery Co., Inc., installment obligations as shown on page 1 of the account, and cash.

Accountants objected to the Commonwealth's appraisement of the valuation of two installment obligations owed to decedent jointly by his son, his brother and his nephew. As of the time of his death, decedent was to be paid under these obligations 92 monthly installments of $1,500 each. After computing interest, the present value of the balance of principal due on the installment obligations was computed as $68,243.22. Both the Commonwealth and the accountants agree to this calculation. But accountants contend that the valuation should be reduced by 50 percent, to $34,121.61, because of a problem as to the collectibility of these obligations.

Accountants concede the collectibility of one-third of these obligations because decedent's son is not only a joint debtor of the estate, but also an estate beneficiary. With regard to the remaining two-thirds of these obligations, the record establishes that although decedent's brother and decedent's nephew are each presently in arrears in paying their share of these obligations, they were current in their payments as of the time of decedent's death. At that time, decedent's nephew was an executive of Strongwear Hosiery Co.,

Inc., with a salary of approximately $40,000 per year, and decedent's brother was retired, but was the owner of approximately $120,000 in debentures of Strongwear Hosiery Co., Inc., payable in monthly installments of $1,500. It is accountants' position, however, that the ability of decedent's nephew and decedent's brother to pay their share of the obligations to decedent's estate were dependent upon the success of Strongwear Hosiery Co., Inc., and that it was already apparent as of the time of decedent's death that Strongwear Hosiery Co., Inc., was suffering serious operating losses, so that its survival was questionable. By reason of the failing fortunes of Strongwear Hosiery Co., Inc., accountants contend that the ability of the debtors to pay their shares of the obligation to decedent was likewise failing and, therefore, the value of the installment obligations should accordingly be reduced by 50 percent due to the possible uncollectibility of the obligations.

The record establishes that Strongwear Hosiery Co., Inc., had net operating losses in the year of decedent's death of $62,000, and had net operating losses the following year of $86,500, and had net operating losses of nine months of the following year of $141,500. While Pennsylvania transfer inheritance tax is determined on the basis of date of death value, evidence of company losses in years subsequent to decedent's death is helpful to the court in determining the condition of Strongwear Hosiery Co., Inc., as of the date of decedent's death. Even without the testimony as to the company's losses in years subsequent to decedent's death, the record is sufficient to establish that Strongwear Hosiery Co., Inc., was having considerable financial difficulty as of the time of decedent's death.

While the financial condition of Strongwear Hosiery Co., Inc., is of some help to the court with

regard to the collectibility of the installment obligations, the court is also concerned with the financial condition of the individual debtors, decedent's brother and decedent's nephew. There is little evidence of the income or net worth of the debtors from which the court can make a determination as to their ability to pay. "Value" under the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, PS §2485-102(24), is, of course, defined as "the price at which the property would be sold by a willing seller, not compelled to sell, to a willing buyer, not compelled to buy, both of whom have *reasonable knowledge of the relevant facts*." (Italics supplied.) No buyer of these installment obligations would be willing to put a price on the installment obligations without knowing the income and net worth of the debtors. Compare the situation of valuing a mortgage receivable in the light of the value of the real estate securing it and the availability of other assets of the mortgagor: Eisenhart's Estate, 71 D. & C. 392.

Even if the court is provided with relevant facts concerning the debtors' ability to pay, it is doubtful if the court would be able to value the assets with any degree of preciseness without the aid of expert testimony. Where a debtor is destitute, the court, without expert testimony, can find that an obligation has no value, but where the debtor is receiving significant income and/or owns significant assets, the court would be making but an educated guess to value the debtor's obligations at 50 percent of present value on the basis of some evidence of possible uncollectibility.

The court is mindful of the language of Judge Learned Hand in Commissioner v. Maresi, 156 F. 2d 929, where he wrote:

"The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow."

Perhaps the legislature might have addressed itself to the elimination of uncertainty, and the possible injustice which may result therefrom, through legislation which could permit, for example, valuation and taxation of installment obligations periodically, *as the same are collected;* but such is not the present state of the law, nor of the Federal estate tax law. See I.R.C. Reg. 20.2031-4.

Even under existing Pennsylvania law, however, which permits no hindsight allowance for actual failure to collect some part of the obligations, the court considers it possible to project, with some precision, a percentage allowance for uncollectibility. But the taxpayer should introduce evidence as to the debtor's ability, or lack of ability, to pay the installment obligations, and should introduce expert testimony, based on all of the evidence introduced, as to the value of the installment obligations in light of the elements of possible uncollectibility and possible litigation to enforce collectibility, and in light of whatever other evidence the expert witness might consider relevant. Cf. Napp v. U. S. (D.C. N. Dist. Ala.), 71-2 U.S.T.C., ¶12,802.

The court recognizes that this issue is a novel one and appreciates that, by reason of the novelty of the issue, accountants were required to prepare for the hearing in this matter with little guidance as to how to proceed. Accordingly, if accountants have available further evidence which they consider relevant in light of this adjudication, the court invites accountants to file, before this adjudication is confirmed absolutely, a petition for leave to present this further evidence. In the absence of any such evidence, however, the court finds that accountants have failed to sustain their burden of demonstrating error in the appraisement of the Commonwealth of Pennsylvania, so that there is transfer inheritance tax due in the amount of

$2,047.30, plus interest at six percent per annum from July 29, 1972, until paid, and said amount is accordingly awarded to the Commonwealth of Pennsylvania.

Subject to distributions heretofore properly made and subject to the views expressed in this adjudication, the net ascertained balances of principal and income are awarded as set forth under the last paragraph of the petition for adjudication.

Power and authority are given the accountants to make the necessary assignments and transfers of the unconverted investment securities herein awarded in kind.

The account is confirmed, and it is hereby ordered and decreed that Sidney V. Steinberg and Charles M. Solomon, executors, as aforesaid, forthwith pay the distributions herein awarded.

And now, November 1, 1973, this adjudication is confirmed nisi.