Estate of Charles H. Lay, Oil City Trust Company, Executor, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 92163.    Promulgated September 7, 1939.

*R. J. Cleary, Esq.*, for the petitioner.
*Paul E. Waring, Esq.*, for the respondent.

524

## OPINION.

BLACK: Did the respondent err in disallowing as a claim against the estate of the decedent the item of $42,372.04 deducted by petitioner under schedule I of the estate tax return? The applicable statute, section 303 (a) (1) of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1932 and section 403 (a) of the Revenue Act of 1934, provides:

SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate—

(1) Such amounts—

   \*        \*        \*        \*        \*        \*        \*

(C) for claims against the estate,

(D) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and

   \*        \*        \*        \*        \*        \*        \*

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered \* \* \*. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agree-

ment, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. * * *

While decedent, Charles H. Lay, was not personally liable upon the notes due by his son, Russell C. Lay, to the Oil City Trust Co., nevertheless, he had during his lifetime loaned some of his securities to Russell to be used as collateral security to secure the payment of Russell's notes to the bank. Certainly to the extent that this collateral will be subjected to the payment of Russell's debts there is a deductible claim under section 303 (a) (1), but the amount of petitioner's claim must be reduced by other considerations which we shall discuss later.

At the time of decedent's death these securities which were the property of decedent and were up as collateral to secure his son's indebtedness had a fair market value of $43,222.22 and were included at that value as a part of decedent's gross estate. The petitioner does not claim as a deduction the full market value of the securities, but claims a somewhat less amount, to wit, $42,372.04. This latter amount represents the figure which remains after the fair market value of the collateral put up prior to decedent's death by Russell, the maker of the notes, is deducted from the indebtedness represented by the notes.

Petitioner concedes that the amount of the collateral put up with the bank by Russell must first be deducted from the indebtedness due the bank and then it contends that the balance, not exceeding the fair market value of the collateral put up by decedent, is deductible from decedent's gross estate—this, of course, assuming that the estate's claim over against Russell was valueless because of his insolvency.

We think that as a general rule, without anything more, petitioner's contention would be sound. But it has been held that the amount of a claim for liability of a decedent as surety or endorser which is deductible from the estate is not in all cases what it would have figured on paper at decedent's death. Subsequent events which serve to increase or decrease the amount which the estate has to actually expend in settlement of the liability may be taken into consideration. *Buck* v. *Helvering*, 73 Fed. (2d) 760; *Percy B. Eckhart, Executor*, 33 B. T. A. 426; *Estate of Harriet Blair Borland*, 38 B. T. A. 598.

The evidence in this proceeding shows that although the creditor, the Oil City Trust Co., had the right to subject to the payment of its notes against Russell the entire collateral put up by decedent to secure the payment of his son's notes, there was an agreement between decedent and his son that decedent should have a claim over against his son for any amount that decedent's collateral should be used to pay the son's debts. Because of this agreement, petitioner concedes

that the indebtedness of $59,015.10 must be reduced by $16,743.06, the value of the collateral pledged by Russell. We think it must be reduced still further in the manner hereinafter set out.

The evidence shows that decedent made special bequests of $5,000 each to Russell's wife and two daughters. These special bequests have been assigned by the owners thereof to Russell and he in turn has assigned them to the bank as additional collateral. The facts show that the estate is thoroughly solvent and that these three specific bequests of $5,000 each will undoubtedly be paid. If, and when they are paid, they will reduce Russell's indebtedness to the bank in the amount of $15,000 and the collateral belonging to decedent will be relieved to that extent. This fact is made clear by the testimony of petitioner's witness, A. E. Mackintosh, vice president of the Oil City Trust Co., whose testimony included the following with reference to the effect of the assignment to the bank of the three specific bequests of $5,000 each:

Q. Who will receive the $5,000 as set forth in those assignments on the ultimate liquidation of this estate?
A. The Oil City Trust Company.
Q. And what will happen to that $15,000 according to your own schedule here for distribution of assets?
A. It would reduce the amount of the notes.

We may point out that when petitioner, as executor of the estate, finally makes payment of this $15,000 to the Oil City Trust Co. it will not be paying it as a debtor but will be distributing it as a fiduciary to the assignee of those entitled to receive it under the terms of the will. When this $15,000 is paid to the Oil City Trust Co. it will reduce Russell's liability on the notes to that extent.

Thus we have to reduce the $59,015.10 indebtedness which existed at the time of decedent's death by $16,743.06, the value of Russell's collateral on that date, a concession which petitioner makes, and, in accordance with our holding, by the $15,000 which will be paid in settlement of the three specific bequests just mentioned. This will leave $27,272.04 of the indebtedness unpaid, which under ordinary circumstances the collateral belonging to the estate of decedent would have to pay and the amount would be deductible under section 303 (a) (1).

There is another consideration, however, that has to be taken into account in determining whether or not under the facts as found the estate will be entitled to have this remaining $27,272.04 allowed as a deduction, which is that Russell is the residuary legatee of decedent's estate. The facts show that the value of the assets belonging to the estate at the time of the hearing in this proceeding is $64,368.49, all liquid securities. The estate owes no indebtedness except to the extent that its collateral up with the Oil City Trust Co. may be subjected to the payment of Russell's notes.

As we have already stated, $15,000 of this $64,368.49 remaining assets of decedent's estate will be used to pay the specific bequests which the Oil City Trust Co. now holds as additional collateral to secure the payment of Russell's notes and when so used it will reduce Russell's notes by that amount. That will leave the estate with $49,368.49 liquid assets, including the assets on deposit with Oil City Trust Co. as collateral. These assets will belong to Russell, as residuary legatee, subject only to the claim of the Oil City Trust Co., there being no other indebtedness of the estate. The value of those remaining assets, $49,368.49, will be considerably greater than the amount of the claim which will still remain unsatisfied after the collateral belonging to Russell and the three specific bequests of $5,000 each are used to reduce the indebtedness. This $49,368.49 residuary part of the estate will, as we have just stated, belong to Russell and, when eventually used to pay the remaining $27,272.04 indebtedness of the Oil City Trust Co. against Russell, it will be a case of using Russell's property to pay Russell's debts and we fail to see where, under these circumstances, the estate of Charles H. Lay is entitled to any deduction at all because of the alleged claim against it.

Of course, if when decedent died there had been indebtedness to the Oil City Trust Co. for money borrowed by decedent, the claim would have been deductible in full. Doubtless, the Commissioner would not contend otherwise, but where an estate is liable only as a surety or an endorser, it can not take any deduction because of such liability where the principal has ample assets to pay the indebtedness. Cf. *Buck* v. *Helvering, supra; Parrott* v. *Commissioner*, 30 Fed. (2d) 792. On this issue we hold for the respondent.

*Decision will be entered under Rule 50.*