ESTATE OF WILLIAM P. METCALF, LOUISE M. PREST AND SANDOL M. STARK, EXECUTRICES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5819. Promulgated June 18, 1946.

*Allan Davis, Esq.,* and *Lewis R. Donelson, III., Esq.,* for the petitioners.

*S. Earl Heilman, Esq.,* for the respondent.

OPINION.

TYSON, *Judge*: The first issue involves the question of whether the respondent erred in including in the decedent's gross estate, under section 811 (a) of the Internal Revenue Code,[1] the value, totaling $24,925 at date of death, of the principal of the bonds in question.

The essential facts and circumstances as set forth in paragraphs numbered (2) to (5), inclusive, of our findings of fact are not in dispute. The petitioners contend (1) that one-half of the principal of the bonds involved was given to each of the two sisters in trust for the other, and, if not so, (2) that an absolute gift of such principal

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death.

was made to each of the two sisters, each sister being delivered and holding such principal of the bonds as agent for the other. The respondent opposes these contentions.

Were the bonds delivered to each sister given to her in trust for the other?

It is agreed by both parties that under the laws of Tennessee a valid parol trust of personalty may be created. The Tennessee rule and the general rule is that, while no particular form of words need be used to create a valid trust, whether written or oral, the declaration of intention must be clear and unequivocal, not vague, doubtful, and uncertain in its material terms, which should include the subject matter or property embraced within the trust, the beneficiaries thereof, the nature and quantity of the interest which the beneficiaries are to have, the terms of the trust, and the manner in which the trust is to be performed. If the language of the declaration is so vague, loose, or equivocal that the necessary requisites of a trust are left in real uncertainty, it will be impossible to administer and enforce the trust in accordance with the intention of the trustor, since that intention can not be determined.[2]

In the instant case we have evidence merely of a delivery of the bonds into the custody of the respective daughters of decedent, coupled with the oral statement of decedent to the effect that each daughter was to hold the bonds in trust, to clip the coupons, and to pay the interest realized therefrom to the other daughter. There is no further indication of what the decedent intended. We think that under the authorities cited this evidence of the intention of the decedent is too vague, loose, and equivocal to justify a conclusion that the principal of the bonds in question was transferred by decedent in trust.

The following language of the court in *Dahlgren* v. *Dahlgren, supra* (p. 758), can be applied here as being particularly apposite:

An express or implied trust must possess inherently the legal specifications which will enable a court to decree its administration in accordance with the wishes of the settlor, who alone has power to assent to it and to declare it. What estate is here granted for the benefit of the children, the income for a period of years, or the corpus of the estate? If the income, what is to become of the principal? If the income and a portion of the principal, what is to become of the residue? When does the trust terminate? Does it last for the life of the children * * * ? The record fails to disclose any terms whatsoever. These are matters that cannot be supplied by a court of equity, but must expressly appear in the declaration of trust itself.

---

[2] 54 Am. Jur., 43, 48, pars. 30, 37; 65 C. J. 231; *Chicago, M. & St. P. R. Co.* v. *Des Moines Union R. Co.*, 254 U. S. 196; *Colton* v. *Colton*, 127 U. S. 300; *Allen* v. *Withrow*, 110 U. S. 119; *Dahlgren* v. *Dahlgren*, 1 Fed. (2d) 755; certiorari denied, 266 U. S. 626; *Eschen* v. *Steers*, 10 Fed. (2d) 739; *Weil* v. *Commissioner*, 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *John A. Cavanagh*, 2 B. T. A. 268; *Godfrey R. Rebmann*, 18 B. T. A. 1265; *Claud McCauley*, 17 B. T. A. 886; *Derrick* v. *Lumpkin*, 20 Tenn. App. 77; 95 S. W. (2d) 939; and *Sheegog* v. *Perkins* (Tenn.), 4 Baxter 273.

The decedent's mere use of the word "trust" can not be relied upon as determinative of whether or not a trust was created, for the whole transaction must be scrutinized. *Morsman* v. *Commissioner*, 90 Fed. (2d) 18; certiorari denied, 302 U. S. 701. See also 54 Am. Jur. 51, par. 40, and 65 C. J. 269, par. 48.

Our conclusion as to the evidence of the intention of the decedent being too vague and loose to justify a conclusion that the principal of the bonds was transferred in trust is supported by the "MUTUAL AGREEMENT AND RELEASE UNDER A SO-CALLED TRUST" executed by decedent's two daughters subsequent to his death. In that agreement and release it is stated, *inter alia*, that the decedent delivered one-half of the bonds in question to each daughter, but "because of the vagueness of said so-called trusts, and apparent lack of terms, conditions or limitations thereof," the two daughters were "desirous of transferring the bonds held by each other outright and free from any so-called trust relationship." It may be here said that although the stipulation shows a figure of $11,000 as the principal of bonds delivered each daughter, the parties, on brief, have treated $10,000 as the correct figure. In connection with our conclusion it is noteworthy that subsequent to the transactions with his daughters the decedent in his will executed in May 1940 and under which his daughters were, for all practical purposes, the sole beneficiaries, made specific provision for the immediate payment to each daughter of $10,000 either in bonds, stocks, or moneys, which amount of $10,000 is the same as the amount of the principal of the bonds which the parties treat as having been delivered each daughter on December 31, 1935.

We conclude, and have so found as a fact, that prior to his death the decedent did not dispose of his ownership of the principal amount of the bonds in question by a valid parol trust.

Did the decedent make an absolute gift of one-half of the principal of the bonds to each of the two sisters?

Inasmuch as actual delivery direct to each daughter of the bonds claimed by petitioners to have been given each daughter was made to the other daughter, petitioners argue that such delivery was delivery to one daughter as agent for the other. Without discussing this argument and assuming, but not so deciding, that it is sound, it is unnecessary to say more than that the evidence with regard to the intention of the deceased when he delivered the principal of the bonds to his two daughters is, as was the case in our disposition of the trust issue, too vague, loose, and equivocal to support a conclusion that the principal of the bonds was transferred to the deceased's two daughters as absolute and unconditional gifts. There is nothing in this evidence indicating any donative intent on the part of the deceased to make such gifts to his daughters and mere delivery of the bonds .

without such intent does not suffice to show a gift. The case of *Collins* v. *McCanless*, 179 Tenn. 656, cited by petitioners, is not *contra*, because there the donor of bonds stated to his wife and children that he was making a gift of the bonds to his wife, thus clearly manifesting a donative intent.

We hold, as we have found to be a fact, that decedent did not dispose of his ownership of the principal amount of the bonds by way of gifts to his two daughters.

The second issue involves the question of whether state, city, and county taxes assessed, plus interest, penalties, and cost, against real estate owned by decedent at date of death are deductible from the gross estate under section 812 (b) (3) of the Internal Revenue Code,[3] prior to its amendment by section 405 of the Revenue Act of 1942, in the full amount of $17,204.54 accrued and constituting a lien against the properties at date of death, as contended by petitioners, or, as determined by respondent, are allowable only to the extent of $7,678.18 actually paid by the estate.

On the facts presented, the petitioners' contention that they need only show that taxes, etc., in the amount of $17,204.54 had accrued as a claim against the decedent's estate to secure a deduction in such amount and that it is wholly immaterial that all of such sum in excess of $7,678.18 will never be paid by the estate, is untenable. Under section 812 (b) (3), *supra*, the deductions granted are limited to such amounts for claims "as are allowed by the laws of the jurisdiction, * * * under which the estate is being administered." In short, the deduction is for only such claims as may be enforced against the estate. *United States* v. *Mitchell*, 74 Fed. (2d) 571; *Glascock* v. *Commissioner*, 104 Fed. (2d) 475. Here, the facts show that the estate paid $7,678.18 in complete compromise of a claim for $14,825 for taxes assessed, plus interest, penalties, and costs, against the Shelby County properties, and thereafter the unpaid balance of $7,146.82 no longer represented an enforceable claim against the decedent's estate, since the indebtedness to that extent was extinguished, *Buck* v. *Helvering*, 73 Fed. (2d) 760; and *Estate of Ethel M. DuVal*, 4 T. C. 722; affd., 152 Fed. (2d) 103; certiorari denied, 328 U. S. 838.

---

[3] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

* * * * * * *

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

* * * * * * *

(3) for claims against the estate,

* * * * * * *

as are allowed by the laws of the jurisdiction * * * under which the estate is being administered, but not including * * * property taxes not accrued before his death, * * *

In *Lucius N. Littauer et al., Executors*, 25 B. T. A. 21, a doctor's claim against the estate amounted to $500, but was settled by payment of $250, and only the latter amount was allowed as a deduction.

In *John Jacobs et al., Executors*, 34 B. T. A. 594 (95 Fed. (2d) 1006), a similar question was involved under the provisions of section 303 (a) (1) of the Revenue Act of 1926 similar to the provisions of the statute applicable here. There, the taxes assessed and accrued at date of death were subsequently rendered noncollectible from the estate by issuance of the Ohio Tax Commission's certificate of immunity. It was held that valid claims against an estate either actually paid or to be paid is what Congress had in mind when it used the words, "claims against the estate," and the claimed deduction was disallowed.

In *Estate of Ethel M. DuVal, supra,* a deduction was sought for the amount of certain notes on which the decedent was coguarantor at date of death. Subsequently, the bank holding the notes and owning the claim against the estate released such claim without payment by consenting to the distribution of the estate. That claim which existed at date of death would never be paid by the estate and it was held that, for Federal tax purposes, no *bona fide* claim was outstanding and there was no basis for a deduction from the gross estate under section 812 (b) (3), *supra.*

The respondent's determination as to the taxes, penalties, costs, and interest on the Shelby County property is approved.

The same principle applied to the Shelby County taxes, costs, interest, and penalties applies to the Dyer County taxes, costs, interest, and penalties, i. e., that the result of the suit brought for collection of those taxes is decisive of the amount of the deduction, if any, to be here allowed. The only difference in material facts between the situations as to the Shelby County taxes, etc., and the Dyer County taxes, etc., is that, in the former, we know that the suit resulted in a final settlement for a lesser amount than that sued for, while, in the latter, we know only that the suit was pending and that no part of the amount sued for had been paid or compromised at the time of this hearing. We do not know whether that suit will terminate by compromise for a lesser amount than claimed in the suit, as was the case in regard to the Shelby County taxes, etc., or, if not compromised, what will be the result of the suit as to the amount, if any, which would be found to be due and which would be paid by this estate. Cf. *Jacobs v. Commissioner*, 34 Fed. (2d) 233, and *John Jacobs et al., Executors, supra.* We are not apprised as to whether the suit pending in the Tennessee court is being defended on the ground that there is no liability for any of the amount sued for or on the ground that there is a liability for only a portion thereof. In either event, however, the position

taken by petitioners in the Tennessee court conflicts with their position here, where they claim a deduction for the entire amount sued for in the Tennessee court. In view of such conflicting positions we are left in an unresolvable doubt as to what amount, if any, should be allowed as a deduction; and, in such circumstances, we have no alternative other than to deny the deduction. Accordingly, we approve the determination of the respondent with regard to the Dyer County taxes.

*Decision will be entered for the respondent.*