*Decision will be entered for the respondent.*

ESTATE OF MARY REDDING SHEDD, FIRST NATIONAL BANK OF ARIZONA, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81379. Filed December 1, 1961.

*Louis McClennen, Esq.,* for the petitioner.
*James Q. Smith, Esq.,* for the respondent.

OPINION.

FAY, *Judge:* The Commissioner determined a deficiency in estate tax of $27,433.15. The issues presented for decision are:

(1) Whether petitioner may deduct under section 2053 of the Internal Revenue Code of 1954 the sum of $29,385.35 due and originally paid to the estate of Harrison P. Shedd, in view of the fact that the estate of Mary Redding Shedd, subsequent to the filing of its estate tax return, recovered from the estate of Harrison P. Shedd the sum of $27,015.17.

(2) Whether the enactment of section 93 of the 1958 Technical Amendments Act and the allowance in January 1961 of the marital deduction to the estate of Harrison P. Shedd, pursuant to said Act, affected the right of the estate of Mary Redding Shedd to claim a credit of $26,182.52 for taxes paid on prior transfers.

(3) Whether any interest will be due on such deficiency prior to the allowance and payment of the claim of the estate of Harrison P. Shedd in January 1961.

All of the facts have been stipulated, are so found, and are incorporated herein by reference. Those necessary to an understanding of our inquiry are recited below.

Harrison P. Shedd (hereinafter referred to as Harrison), husband of Mary Redding Shedd (hereinafter referred to as Mary), died testate on November 1, 1949. A codicil to his will dated July 26, 1948, provided a power of appointment to his widow, as follows:

Notwithstanding any other provisions of this will, I hereby give and grant to my wife, Mary Redding Shedd, if she survives me, the power of appointment over one-half of the corpus of the trust estate created under item VI of this Last Will and Testament exercisable at any time during her life in her favor or in favor of others by written instructions filed with the trustee or exercisable under her Last Will and Testament.

Item VI of the will provided that the residue of the estate be placed in trust with a corporate trustee. Two-thirds of the income thereof was to be distributed to Mary and the remainder of the income to decedent's son. The trust was to terminate upon the death of the survivor of two named grandchildren and it was then to be distributed to the issue of said grandchildren.

On October 15, 1950, Mary filed written instructions with the executor of her husband's estate indicating her election to exercise the power of appointment granted her in the will. The Probate Court, acting upon these instructions, ordered distribution of one-half of the residue of the estate to Mary on October 15, 1950.

Subsequently, the Commissioner determined a deficiency of $71,096.05 against Harrison's estate on the ground, primarily, that Harrison's estate was not entitled to a marital deduction for one-half the residue ($216,775.27) distributed to Mary. A petition was filed in the Tax Court challenging this determination. The Tax Court (*Estate of Harrison P. Shedd*, 23 T.C. 41 (1954)) held that the surviving spouse, donee of a power of appointment in a testamentary trust, must have the power to appoint the entire corpus free of the trust. As Harrison had, under the terms of his will and codicil thereto, given his wife the power to appoint only one-half of the trust, it was considered that this failed to meet the requirements of section 812(e)(1)(F) of the Internal Revenue Code of 1939. The case was appealed

to the Court of Appeals for the Ninth Circuit, which court affirmed the Tax Court, 237 F. 2d 345 (1956). The Supreme Court denied certiorari, 352 U.S. 1024 (1957).

The deficiency as finally determined by the Tax Court was $58,770.69.

Mary died testate on January 7, 1955, and letters testamentary were issued to the First National Bank of Arizona on February 2, 1955. Mary's Federal estate tax return was filed with the director of internal revenue, Phoenix, Arizona, on April 9, 1956, and reported a gross estate of $420,341.61 with deductions of $82,720.50. The sum of $35,548.02 representing Mary's share of the estate tax deficiency in Harrison's Tax Court case was a part of the claimed deductions. In addition, Mary's estate claimed a credit for tax on prior transfers in the amount of $31,157. The parties now agree that if Mary's estate is entitled to such a credit the correct amount thereof is $26,182.52.

Since Mary died prior to the final determination of Harrison's estate tax case in 1957, her executor was required to reimburse Harrison's estate for the one-half share of the additional tax as transferee of one-half of the trust assets. This reimbursement was made in 1957 in the amount of $29,385.35. When Mary's estate tax return was reviewed by the revenue agent in June 1958, a deduction of $29,385.35 was allowed.

Section 93 of the Technical Amendments Act of 1958 was enacted effective September 2, 1958. It amended section 812(e) (1) (F) of the Internal Revenue Code of 1939 to conform it with section 2056(b) (5) of the Internal Revenue Code of 1954 and thereby permitted the marital deduction with respect to estates of decedents dying after April 1, 1948, where the surviving spouse is entitled to receive all the income from a specific portion of a trust with a power in such a survivor to appoint the specific interest. The Act permitted the filing of a claim for refund or credit within 1 year after the date of its enactment by those claimants otherwise prevented by reason of limitations.

On April 22, 1959, Harrison's estate filed a claim for refund pursuant to the Technical Amendments Act of 1958. The reviewing agent disallowed the claim. However, in January 1961 the claim was approved by the Appellate Division of the Internal Revenue Service in the amount of $54,030.35, and the amount claimed was paid to Harrison's estate. Harrison's estate then paid one-half thereof ($27,015.17) to Mary's estate.

Respondent, on brief, contends that since section 812(e) (1) (F) was amended retrospectively by section 93 of the Technical Amendments Act of 1958 the latter section operates *ab initio* and necessitates a reexamination of these transactions in the light of what is now stated to have been the applicable law. Petitioner argues, on the

other hand, that events occurring after the death of Mary should have no effect upon the deductibility of valid claims and credits which existed at the time of her death.

In *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1939), the Supreme Court announced the general principle of law that for Federal estate tax purposes, "The estate so far as may be is settled as of the date of the testator's death." In that case the Court held that the fact of a life tenant's premature death could not be substituted for the actuarial computation of the life tenant's life expectancy for purposes of determining the value of the deduction for a charitable remainder.

While recognizing this general principle of law, this Court and others have not been persuaded that the language in the *Ithaca Trust Co.* case connoted the broad proposition that throughout the estate tax area evidence of events occurring after the decedent's death is never admissible. *Estate of John Sage*, 42 B.T.A. 1304, 1308 (1940), affd. 122 F. 2d 480 (C.A. 3, 1941), certiorari denied 314 U.S. 699 (1942); *Jacobs* v. *Commissioner*, 34 F. 2d 233, 236 (C.A. 8, 1929). Thus, particularly in cases involving the deductibility of claims against an estate, subsequent events which serve to increase or decrease the amount which the estate had to actually pay in settlement of the liability, have been taken into consideration. *Estate of Charles H. Lay*, 40 B.T.A. 522, 526 (1939); *John Jacobs et al., Executors*, 34 B.T.A. 594 (1936), remanded 95 F. 2d 1006 (C.A. 6, 1938); *Estate of Harriet Blair Borland*, 38 B.T.A. 598 (1938); *Estate of Ethel M. Duval*, 4 T.C. 722 (1945), affd. 152 F. 2d 103 (C.A. 9, 1945), certiorari denied 328 U.S. 838 (1946); *Estate of William P. Metcalf*, 7 T.C. 153 (1946). The reasoning of these cases is predicated upon the belief that Congress, in providing for the deductibility of claims against an estate, had in mind only claims presented and allowed or otherwise determined as valid and actually paid or to be paid. *Jacobs* v. *Commissioner, supra; John Jacobs et al., Executors, supra*. Consequently, if the liability of the estate was uncertain because of the potential nature of the claim, or because the estate was disputing its liability or because no claim was actually presented, the courts, under such circumstances, felt justified in looking to subsequent happenings to ascertain how much, in fact, the estate would be required to pay. *Buck* v. *Helvering*, 73 F. 2d 760 (C.A. 9, 1934); *Percy B. Eckhart, Executor*, 33 B.T.A. 426 (1935), appeal dismissed 91 F. 2d 1010 (C.A. 7, 1937); *Estate of Ethel M. Duval, supra; Estate of William P. Metcalf, supra*.

In the instant case, at the time of Mary's death in 1955, no final and binding determination had been made by the courts with respect to the estate tax liability of Harrison's estate. It was not until Harrison's estate had exhausted its judicial remedies that the estate tax

liability became fixed, and this did not take place until 1957.[1] Correspondingly, until the Harrison estate tax liability became fixed, Harrison's estate possessed no enforcible claim against Mary's estate; *a fortiori*, until 1957 the claim against Mary's estate was only a potential one. Such being the case, we do not believe this Court would have been precluded from considering subsequent events had we been concerned solely with whether the amount of the deductible claim was that which was set forth in the estate tax return and thought to be due as of Mary's death or whether the amount deductible was limited to that which was finally determined to be due by the Tax Court. The case law would seem to favor allowance of the latter amount. *Jacobs* v. *Commissioner, supra; Estate of William P. Metcalf, supra.*

The situation here, however, extends further. The undisputed facts disclose that in 1957 Mary's estate was called upon to reimburse Harrison's estate for one-half of the additional tax; forthwith the claim lost its potential character and became one of actuality. In response to this, Mary's estate paid over to Harrison's executors the sum of $29,385.35. In June 1958 Mary's estate tax return was reviewed by a revenue agent. The deduction claimed by reason of the Harrison estate tax liability was reduced by the agent from $35,548.02 to $29,385.35. It is to be noted that the petitioner does not claim here that it is entitled to a deduction of $35,548.02 but seeks only to deduct one-half of the deficiency determined by the Tax Court in the Harrison estate tax case. Therefore, the question we must decide in this case is whether events subsequent to payment of a claim against an estate may be considered in determining the propriety of the deduction.

As we have previously indicated, at the time of Mary's death the claim against her estate by virtue of the Harrison litigation was contingent and dependent upon the outcome of that case. Under such circumstances, we do not feel governed by the events existing at the time of Mary's death and accordingly hold that the principle of the *Ithaca Trust Co.* case, is not applicable to the instant case. *Estate of William P. Metcalf, supra.*

If, therefore, we are not bound by the events existing at the time of death, we can find no justification for refusing to consider facts subsequent to the date of payment of the claim. In this case the facts disclose that Mary's estate recovered from Harrison's estate the sum of $27,015.17. We believe to this extent the Commissioner was correct in disallowing the claimed deduction. Furthermore, what we have stated with regard to the disallowance of the aforementioned deduction under section 2053 of the 1954 Code has equal application to the

---

[1] The decision of this Court was handed down on October 15, 1954. However, the appeals to the Circuit Court of Appeals for the Ninth Circuit and to the Supreme Court of the United States were not finally disposed of until March 4, 1957, at which time the Supreme Court denied certiorari.

disallowance of the credit for taxes on prior transfers claimed by Mary's estate in the amount of $26,182.52. Respondent is sustained on this issue as well.

Petitioner asserts on brief that the disallowance of the deduction and credit would be a violation of the Fifth Amendment of the Constitution. This Court has consistently held that the issue of constitutionality will not be considered where it is not specifically raised in the pleadings. *Calvert Iron Works, Inc.*, 26 T.C. 770, 781 (1956); *Max Isenbergh*, 31 T.C. 1046, 1057 (1959); *Estate of Ida Jarvis Pyle*, 36 T.C. 1017 (1961).

Petitioner also contends that interest should be computed from January 31, 1961, the date when Harrison's claim for refund was paid. No discussion of the merits of this issue is necessary or proper in the instant case, since the law is now well established that this Court has no jurisdiction over matters concerning interest. *Gussie P. Chapman*, 14 T.C. 943, 947 (1950), affirmed per curiam 191 F. 2d 816 (C.A. 9, 1951), certiorari denied 343 U.S. 905 (1952), rehearing denied 343 U.S. 937 (1952); *G. E. Fuller*, 20 T.C. 308 (1953), affd. 213 F. 2d 102 (C.A. 10, 1954).

*Decision will be entered under Rule 50.*