ESTATE OF REGINALD L. TAYLOR, DECEASED, IRENE GOWETZ AND ROBERT S. BOWDITCH, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84988. Filed November 7, 1962.

*Irene Gowetz, Esq.,* for the petitioner.
*J. Frost Walker, Esq.,* for the respondent.

OPINION.

FISHER, *Judge:* Respondent determined a deficiency in estate tax of the Estate of Reginald L. Taylor in the amount of $38,669.86. Some of the issues are uncontested and will be reflected in the Rule 50 computation.

The issue in dispute is whether petitioner is entitled to a deduction from gross estate for the date of death value, using actuarial tables, of the former wife's right to receive monthly support payments until she died or remarried, or whether the deduction is limited to the amounts actually paid to the former wife for the period from the date of the decedent's death to the date of remarriage of the former wife.

The facts have been stipulated and the stipulation and exhibits attached thereto are incorporated herein by reference.

The decedent, Reginald L. Taylor, died a resident of the Commonwealth of Massachusetts on September 12, 1955. Robert S. Bowditch and Irene Gowetz were appointed executors of his will on October 25, 1955.

On September 11, 1931, Reginald and Alice E. Taylor were married and on May 15, 1946, Reginald and Alice executed a separation agreement. Also parties to such agreement were two trustees, Chester F. Pero, acting for Alice, and Frank C. Smith, Jr., acting for Reginald.

Paragraph 6 and 8 of Article Second of such agreement provide as follows:

6. In addition to the foregoing, the husband shall pay or cause to be paid to the wife for her support the sum of $500 on the first day of June, 1946 and of each succeeding month if and so long as the wife is living and remains unmarried.

\* \* \* \* \* \* \*

8. In the event of the death of the husband during the lifetime of the wife and while she is unmarried, the wife shall be paid not less than a net amount of $10,000. from the proceeds of life insurance policies insuring the life of the husband, the premiums on which shall be paid by him, or, if said net amount of $10,000. has not been provided through life insurance, then there shall be paid from his estate a net amount of $10,000.00.

On May 24, 1946, a divorce decree respecting Reginald and Alice, which incorporated the above agreement, was entered by the Probate Court for Worcester County, Massachusetts.

Reginald died on September 12, 1955, survived by his former wife, Alice, who was then 45 years of age and had not remarried. The monthly installments of $500 were regularly paid to Alice from June 1, 1946, until September 12, 1955, the date of Reginald's death.

Upon the death of Reginald, Alice made demand upon the executors under his will for continuation of the monthly payments and for the payment of $10,000.

The executors refused to continue the payment of the monthly installments and made no further payments until 1959.

On January 9, 1956, one of the executors under the will of Reginald forwarded a check for $1,000 to Alice. In an accompanying letter he stated that the check was a payment against the $10,000 due her under the separation agreement "without any prejudice to any other claim you may have against \* \* \* [Reginald] or his estate."

To enforce paragraphs 6 and 8 of Article Second of the separation agreement, two actions of contract were brought on October 11, 1956, in the Superior Court of the Commonwealth of Massachusetts against the executors under the will of Reginald. One action was brought in the name of Alice E. Taylor as plaintiff and the other by Chester F. Pero as trustee for her benefit.

Count One of each declaration was to recover the $500 monthly payments from September 12, 1955 (the date of Reginald's death), to October 31, 1956, with interest. Under Count Two of each declaration, recovery was sought for the $10,000 allegedly due under paragraph 8, less the $1,000 paid on account, plus interest. In such litigation the executors contended that "the intention of the parties to the separation agreement was that the monthly payments of $500 would terminate on the death of Reginald."

The cases were tried before a judge of the Superior Court who found for the plaintiff in each case on both counts.

On December 12, 1956, the executors of the estate of Reginald filed a Federal estate tax return with the district director of internal revenue for the district of Massachusetts. On Schedule K of this return, there was claimed as a deduction a claim against the estate in the amount of $105,982 for "claim of divorced wife Alice E. Taylor (in litigation)." Such amount was composed of two items:

(a) $95,982, which is the stipulated actuarial value on September 12, 1955 (the date of Reginald's death), of the right of a woman 45 years of age to receive $500 a month if and so long as she is living and remains unmarried.

(b) $10,000, which is the amount set forth in paragraph 8 of the separation agreement.

On October 4, 1957, Alice remarried, thereby relinquishing all further rights to the monthly installments accruing subsequent thereto.

The executors appealed from the decision of the Superior Court to the Supreme Judicial Court of Massachusetts which, in an opinion dated May 29, 1959, affirmed the decision of the Superior Court.

Subsequent to May 29, 1959, and in conformity with the opinion and order of the Supreme Judicial Court, the executors paid Alice $12,500, representing payments of $500 a month for 25 months after the death of Reginald until the time she remarried, and $9,000 representing the balance owed to her on the $10,000 claim under paragraph 8 of the settlement agreement.

After the remarriage of Alice, she had no enforceable claim against the estate of Reginald under the laws of Massachusetts for any amounts other than the $22,500 claims for which she was ultimately paid.

Respondent disallowed the deduction for the claims of Alice on the estate tax return to the extent that they exceeded the amount of $12,500. On brief, however, he concedes the deductibility of the $10,000 lump-sum payment, thereby increasing the deduction to $22,500.

The only issue before us, therefore, concerns the amount which the estate may deduct because of Alice's claim for continued alimony payments.

The parties agree, and it is well settled, that a wife's claim for alimony payments against her former husband's estate pursuant to a separation agreement fixing the scope of the husband's obligations of support and incorporated in a divorce decree is a deductible claim against the estate. *Estate of Pompeo M. Maresi*, 6 T.C. 582, 586 (1946), affd. 156 F. 2d 929 (C.A. 2, 1946). The parties further agree that the present value of Alice's claim as of Reginald's death, if it may properly be computed on the basis of actuarial tables, was $95,982.

Petitioner contends that it should be allowed to deduct $95,982, being the stipulated present value, as of Reginald's death, of her right to receive $500 monthly until she dies or remarries. Respondent, on the other hand, contends that the deduction for such claim should be limited to the amount actually paid by the estate in full satisfaction of such claim, or $12,500.

Section 2053(a), I.R.C. 1954, provides:

SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
  (1) for funeral expenses,
  (2) for administration expenses,
  (3) for claims against the estate, and
  (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

It is well recognized, with respect to the allowance of claims against an estate, that if liability is established or uncontested, and if the claim is of such a character that the amount is not fixed at the time of death but may be computed by recognized use of mortality tables, the use of such tables will be approved as a factor in determining the amount deductible. *Commissioner* v. *Maresi*, 156 F. 2d 929 (C.A. 2, 1946), affirming 6 T.C. 582, 586 (1946).

There are instances, however, where a disputed claim, or one contingent, or merely potential, at death may be of such a character that the question of whether it is binding or not cannot be resolved until appropriate steps are taken, such as legal action, waiver, compromise

or the like. Thus, while actuarial tables may be appropriate, in a proper case, such as to meet the contingencies of Alice's remarriage or death, we know of no tables which can reasonably predict the outcome of a disputed claim. Here, because of the uncertainty as to whether the estate would ever pay any amount to Alice on her disputed claim, the estate's liability was contingent, and the outcome of such dispute must be looked to before the estate would be entitled to a deduction. *Estate of Mary Redding Shedd*, 37 T.C. 394, 397 (1961) on appeal (C.A. 9) ; *Estate of William P. Metcalf*, 7 T.C. 153 (1946), affirmed by mandate (C.A. 6, 1947) ; *Estate of Ethel M. Duval*, 4 T.C. 722 (1945), affd. 152 F. 2d 103 (C.A. 9, 1945), certiorari denied 328 U.S. 838 (1946).

Clearly the contesting of Alice's claim was not a frivolous or capricious act, but was based upon legal arguments which the estate deemed of sufficient importance to merit the attention of the highest court of Massachusetts.

The value of the claim for deduction purposes was not reasonably ascertainable until the litigation ended and the estate finally recognized its liability to Alice. If Alice had remained unmarried up to or beyond the time of the final determination of the basic question of whether she was entitled to any payments for periods subsequent to her husband's death, the estate might then have been entitled to deduct the actuarial value of Alice's claim in determining the amount which it reasonably expected to pay on her claim. But at such time Alice had already remarried and any resort to actuarial tables would be unwarranted and would be preferring fiction over fact with no logical justification. Looking to all events until the time when the claim was no longer "contingent," we know that the ultimate claim against the estate for alimony payments was only $12,500. It is our view that this is the sole amount which the estate should be allowed to deduct for estate tax purposes in relation to the periodic payments.

Much confusion in this area concerning the question of whether we can look to postdeath events in valuing a claim against an estate has been caused by misinterpretation or misapplication of the Supreme Court's opinion in *Ithaca Trust Co.* v. *United States*, 279 U.S. 151, 155 (1929), in which the Court said, in part, that the "estate so far as may be is settled as of the date of the testator's death."

In the *Ithaca* case, the Supreme Court, in determining the value of a charitable remainder, refused to give effect to the premature death of the life tenant which had the effect of increasing the value of the charitable remainder, stating that the value of such remainder must be determined at death using actuarial tables because the "tax is on the act of the testator not on the receipt of property by the legatee" and that "the value of the thing to be taxed must be estimated as of the

time when the act is done." *Ithaca Trust Co.* v. *United States, supra* at 155.

It has long been held, however, that the principle of *Ithaca, supra,* is not applicable in valuing claims against an estate under circumstances analogous to those involved in the instant case. In pointing out the distinction, we said, in part, in *Mary Redding Shedd, supra* at 397:

In *Ithaca Trust Co.* v. *United States,* 279 U.S. 151 (1939), the Supreme Court announced the general principle of law that for Federal estate tax purposes, "The estate so far as may be is settled as of the date of the testator's death." In that case the Court held that the fact of a life tenant's premature death could not be substituted for the actuarial computation of the life tenant's life expectancy for purposes of determining the value of the deduction for a charitable remainder.

While recognizing this general principle of law, this Court and others have not been persuaded that the language in the *Ithaca Trust Co.* case connoted the broad proposition that throughout the estate tax area evidence of events occurring after the decedent's death is never admissible. *Estate of John Sage,* 42 B.T.A. 1304, 1308 (1940), affd. 122 F. 2d 480 (C.A. 3, 1941), certiorari denied 314 U.S. 699 (1942) ; *Jacobs* v. *Commissioner,* 34 F. 2d 233, 236 (C.A. 8, 1929). Thus, particularly in cases involving the deductibility of claims against an estate, subsequent events which serve to increase or decrease the amount which the estate had to actually pay in settlement of the liability, have been taken into consideration. *Estate of Charles H. Lay,* 40 B.T.A. 522, 526 (1939) ; *John Jacobs et al., Executors,* 34 B.T.A. 594 (1936), remanded 95 F. 2d 1006 (C.A. 6, 1938) ; *Estate of Harriet Blair Borland,* 38 B.T.A. 598 (1938) ; *Estate of Ethel M. Duval,* 4 T.C. 722 (1945), affd. 152 F. 2d 103 (C.A. 9, 1945), certiorari denied 328 U.S. 838 (1946) ; *Estate of William P. Metcalf,* 7 T.C. 153 (1946). The reasoning of these cases is predicated upon the belief that Congress, in providing for the deductibility of claims against an estate, had in mind only claims presented and allowed or otherwise determined as valid and actually paid or to be paid. *Jacobs* v. *Commissioner, supra; John Jacobs et al., Executors, supra.* Consequently, if the liability of the estate was uncertain because of the potential nature of the claim, or because the estate was disputing its liability or because no claim was actually presented, the courts, under such circumstances, felt justified in looking to subsequent happenings to ascertain how much, in fact, the estate would be required to pay. *Buck* v. *Helvering,* 73 F. 2d 760 (C.A. 9, 1934) ; *Percy B. Eckhart, Executor,* 33 B.T.A. 426 (1935), appeal dismissed 91 F. 2d 1010 (C.A. 7, 1937) ; *Estate of Ethel M. Duval, supra; Estate of William P. Metcalf, supra.*

See also *Jacobs* v. *Commissioner,* 34 F. 2d 233, 235, 236 (C.A. 8, 1929), affirming 9 B.T.A. 636 (1927), certiorari denied 280 U.S. 603 (1929). Cf. *Commissioner* v. *Shively,* 276 F. 2d 372 (C.A. 2, 1960), reversing T.C. Memo. 1958–196.

Moreover, the Supreme Court, in *Helvering* v. *Safe Deposit & Trust Co.,* 316 U.S. 56 (1942) said, in part, p. 65:

Whatever may be the general rule in this respect [referring to *Ithaca* by footnote] this Court has clearly recognized * * * that events subsequent to the decedent's death, events controlled by his beneficiaries, can determine the inclusion or not of certain assets within the decedent's gross estate * * *

We think it clear that this principle is also applicable to the determination of the correct amount of claims against the estate.

We add that, even though an estate may be fully liable to pay an amount due by decedent at death, if such liability is thereafter waived by the claimant, and does not exist when the return is filed, no deduction may be taken. *Jacobs* v. *Commissioner, supra* at 235, where it was said, "In our opinion a claim without a claimant was not in the mind or purpose of Congress when the words 'claims against the estate' were written into the revenue statutes." ·

Our interpretation of the code is in harmony with section 20.2053-1(b)(3), Income Tax Regs., which provides, in part, as follows:

Sec. 20.2053–1  Deductions for expenses, indebtedness, and taxes; in general.

\*    \*    \*    \*    \*    \*    \*

(3) *Estimated amounts.* An item may be entered on the return for deduction though its exact amount is not then known, provided it is ascertainable with reasonable certainty, and will be paid. No deduction may be taken upon the basis of a vague or uncertain estimate. If the amount of a liability was not ascertainable at the time of final audit of the return by the district director and, as a consequence, it was not allowed as a deduction in the audit, and subsequently the amount of the liability is ascertained, relief may be sought by a petition to the Tax Court or a claim for refund as provided by sections 6213(a) and 6511, respectively.

Petitioner also contends that the action of the executors in contesting a claim should not affect its deductibility. But executors' actions very often have the effect of changing the amount of an original claim. They may litigate, compromise, or settle under authority of the proper court, and sometimes even without such authority as in the instance of claims subject to a defense of the statute of limitations which is ordinarily contingent upon the election of the executor to interpose the defense.

In the light of the foregoing discussion, we hold, with respect to the $500 monthly payments claimed by the former wife for the period beginning with the death of Reginald L. Taylor, the estate's deduction is limited to $12,500.

*Decision will be entered under Rule 50.*