WILLIAM F. HADEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haden v. Commissioner
Docket No. 10060-85.
United States Tax Court
T.C. Memo 1986-539; 1986 Tax Ct. Memo LEXIS 69; 52 T.C.M. (CCH) 986; T.C.M. (RIA) 86539; November 6, 1986. Harvey S. Williams, for the petitioner. Wilton A. Baker, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's 1981 income tax in the amount of $19,061 and additions to tax for that year as follows: IRC, 1954
Amount
Sec. 6651(a)(1)
$2,701.75
Sec. 6653(a)(1)
953.05
Sec. 6653(a)(2)
50 percent of
the interest
due on $19,061
*70 The $19,061 deficiency represents the full amount of tax determined by the Commissioner to be due on petitioner's 1981 income. The tax so determined is the sole component of the deficiency and is not offset by any amount shown as due on a return filed by petitioner. After concessions, [1] there remains no dispute with respect to the amount of tax properly imposed on petitioner's income in 1981, but the controversy centers on the propriety of the additions to tax. That issue depends, to a large extent, on whether petitioner prepared and mailed a timely return for 1981. For convenience, our findings of fact and opinion are combined. Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. The exhibits presented to this Court consist largely of IRS records of petitioner's filing of Federal income tax returns and payment of Federal income tax during the years 1979 through 1984. In April 1979, petitioner *71 filed from District Heights, Maryland, a joint Federal income tax return for 1978 with his then wife Brenda Haden. On that return, the tax liability was computed and a refund was shown to be due. In April of 1980, petitioner filed, from the same District Heights address, a joint Federal income tax return for 1979 with his then wife Brenda Haden. On that return, petitioner and his wife did not figure their tax liability, but elected to have the Secretary compute the tax. Sometime after his April 15, 1980, filing of the 1979 return, petitioner moved from District Heights, Maryland, to Gaithersburg, Maryland. On June 2, 1980, petitioner was sent a "First Notice" of a balance due with respect to the 1979 tax liability. The address to which this notice was sent is unclear from the record. On September 14, 1981, because no payments were made with respect to the 1979 tax liability, it became a "Taxpayer Delinquent Account". Not until March 26, 1982, was payment of the 1979 tax liability (with addition and interest) received. Petitioner's 1980 income tax return which normally would have been filed on April 15, 1981, is not in evidence, and the Commissioner has no record of having *72 received that return. Petitioner claims he filed it from his Gaithersburg, Maryland, address. In October of 1981 petitioner moved from Gaithersburg, Maryland, to Cherry Hill Road in College Park, Maryland. Petitioner, his wife at the time of trial (May 28, 1986) Joyce Haden, and a friend Steve Gibson, each testified at trial about the circumstances surrounding petitioner's April 15, 1982, filing of his 1981 Federal income tax return. We summarize that testimony in the next two paragraphs. On the evening of April 15, 1982, petitioner sat at the small, round kitchen table in his College Park, Maryland, apartment and prepared his 1981 Federal income tax return by filling out a Form 1040 and attaching his Form W-2. On that return he did not compute that tax due, but elected to have the tax computed by the Secretary as allowed by section 6014, IRC 1954. He then hand copied the critical information given on the return on a second Form 1040. He did not at that time fill in his address on the handwritten copy nor did he then sign the copy. He then placed the completed return in the envelope provided in the tax booklet, [2] and sealed and stamped the envelope. Joyce, who was at the *73 time not yet his wife, sat across from him at the table and watched him prepare both the return and the handwritten copy. Later that evening, Steve Gibson joined petitioner and Joyce at petitioner's home. The three of them, with petitioner driving, Joyce seated in the passenger's seat, and Steve Gibson seated in the back seat, drove from petitioner's College Park apartment to the main Post Office in the District of Columbia.As they approached the Post Office they found the road congested with traffic and they found Postal employees stationed out along the street at different corners. Petitioner handed Joyce the envelope containing his 1981 Federal income tax return and Joyce handed the envelope through the open car window to a Postal employee. In December 1982, petitioner moved from his College Park apartment to Carissa Lane in Laurel, Maryland. On August 15, 1983, as *74 a result of the IRS' "W-2 matching program", a computer generated notice was sent to petitioner in connection with his 1981 tax liability. The notice presumably informed petitioner that a W-2 reflecting his 1981 wages and withholding had been received from his employer but that no tax return had been received from petitioner. Petitioner testified that he did not receive that August 1983 notice. Second, third, and fourth notices were sent on September 19, 1983, October 10, 1983, and October 31, 1983, respectively. The record is not clear with respect to the address to which these notices were sent. On November 21, 1983, petitioner's 1981 return became "a taxpayer delinquency investigation case". In December 1983 petitioner received a telephone call from the IRS notifying him that it had not received his 1981 tax return. After requesting and receiving from his employer an additional copy of his W-2 for 1981, petitioner on February 23, 1984, filled in his name and address, then signed, dated and sent the IRS the handwritten copy which (according to his testimony) he had prepared April 15, 1982. The address shown on the copy sent to the IRS was petitioner's February 23, 1984, Carissa *75 Lane address. He also testified that before he sent the IRS the copy made on April 15, 1982, he copied the critical figures from the April 15, 1982, handwritten copy onto a blank Form 1040 for 1981, and he kept this latter hand copy for his own records.IRS records show that the return thus mailed to it on February 23, 1984, was received on March 5, 1984. By that time, the IRS had prepared a "dummy return" for petitioner which was filed March 8, 1984. On July 9, 1984, the Philadelphia Service Center, Taxpayer Assistance Section, sent petitioner a letter acknowledging receipt of an "amended return for the tax year [1981]". This "amended return", receipt of which was acknowledged, was the handwritten copy of the 1981 return sent by petitioner on February 23, 1984. It was treated as an amended return presumably because the Secretary had prepared a dummy return. In September 1984, petitioner moved from his Carissa Lane address in Laurel, Maryland, to Dorsett Road in Laurel, Maryland. On October 19, 1984, the Service Center Examination Branch sent petitioner a "30-day letter". The notice indicated that the Center had not received a response to its requests for a Form 1040 (presumably *76 the four computer generated notices sent during August through October 1983) and had concluded that petitioner did "not intend to file". Consequently, petitioner's tax and proposed additions were figured, and would be processed unless he was heard from within 30 days. Petitioner was sent a notice of deficiency on January 29, 1985. His petition was filed April 23, 1985. In the meantime, petitioner timely filed his 1982, 1983, and 1984 Federal income tax returns. On his 1982 return petitioner did not figure his tax, but elected to have the Secretary compute the tax. The Secretary's computation showed a $2,335.47 refund to be due petitioner. Petitioner's 1983 and 1984 returns were both filed jointly with Joyce Haden, whom he had married November 12, 1983. Both returns were prepared through the use of a return preparer and both resulted in refunds of tax to petitioner and his wife. As described in detail above, the IRS records presented in evidence indicated that for the tax years 1978, and 1982 through 1984, petitioner timely filed Federal income tax returns.They also indicate that for the year 1979 petitioner timely filed a tax return on which he elected, under section 6014, *77 to have the Secretary compute the tax, but that petitioner did not pay that tax (with additions and interest) until March 26, 1982. The IRS records further fail to show the receipt of a return from petitioner for either of the tax years 1980 or 1981. Only the year 1981 is at issue here. The issue is solely one of fact. The evidence that the IRS records fail to show that petitioner filed returns for two years in a row is strong, and the Commissioner's position generally is supported to some extent by petitioner's dilatory payment of his delinquent 1979 taxes only less than a month prior to the alleged filing of his 1981 return on April 15, 1982. On the other hand, petitioner testified in detail and at length about the preparation of his 1981 return and its delivery to a Postal employee standing outside the Post Office building on the evening of April 15, 1982, who was receiving returns from many motorists. That testimony was corroborated in full by his present wife, Joyce Haden, and by his friend, Steve Gibson, to the extent that it related to delivery of the envelope to the Postal employee. Although we continued to entertain strong doubts in view of the Government's evidence, *78 that testimony rang true, notwithstanding that it may have been somewhat shaky on a few peripheral details. We heard and observed the witnesses, and have decided to accept their testimony as truthful. We recognize the possibility that we may have been sold a bill of goods, but it is our best judgment that the scales tipped in petitioner's favor, and we find as a fact, without strong conviction, that on the evening of April 15, 1982, petitioner did deliver the original of this 1981 return to an employee of the United States Postal Service who was standing on the sidewalk outside the Post Office building receiving returns from taxpayers in automobiles. The Commissioner does not dispute that such delivery would constitute timely filing. Although the case may be a close one, we hold that no addition to tax under section 6651(a)(1) is due. Cf. Ferguson v. Commissioner,14 T.C. 846, 850 (1950); Carlin v. Commissioner,T.C. Memo. 1981-694; Carr v. Commissioner,T.C. Memo. 1979-400, affd. without published opinion 631 F.2d 730 (5th Cir. 1980); Wells v. Commissioner,T.C. Memo. 1963-40. As to the additions *79 to tax under section 6653(a)(1) and (2) for an "underpayment * * * due to negligence or intentional disregard of rules or regulations", it is clear that the Commissioner's determination of a negligent underpayment was grounded entirely on a failure to file. Consequently, consistent with our finding above, no addition to tax under section 6651(a) is due. Given both the agreement between the parties on the proper amount of income tax imposed on petitioner in 1981 and our conclusion with respect to the additions to tax, we need not consider petitioner's alternative argument based on the absence of a computation under section 6014, IRC 1954. [3]
*80 Decision will be entered under Rule 155.
Footnotes
1. Petitioner has given up his claim, made on the hereinafter described 1981 return, to an alimony deduction. Respondent concedes that petitioner is entitled to use the "single" filing status for 1981.↩
2. While it is clear from the testimony that petitioner had with him that evening a tax booklet for 1981, it is unclear whether the Form 1040 which he completed came from such a booklet. Two hereinafter described copies of the 1981 return made by hand by petitioner were made on Forms 1040 that were torn out of a booklet.↩
3. The petition further requests the Court to find that petitioner owes no interest and that he is entitled to reasonable litigation costs. It is clear that this Court does not have jurisdiction over the interest issue. See, e.g., Standard Oil Co. v. McMahon,244 F.2d 11, 13 (2d Cir. 1957); Commissioner v. Kilpatrick's Estate,140 F.2d 887, 888 (6th Cir. 1944); LTV Corp. v. Commissioner,64 T.C. 589, 597 (1975); Hudgins v. Commissioner,55 T.C. 534, 538 (1970); Estate of Shedd v. Commissioner,37 T.C. 394, 399 (1961), affd. 320 F.2d 638 (9th Cir. 1963); Chapman v. Commissioner,14 T.C. 943, 946-947 (1950); affd. 191 F.2d 816 (9th Cir. 1951), cert. denied 343 U.S. 905 (1952); Benson v. Commissioner,T.C. Memo. 1985-615; Rodgers v. Commissioner,T.C. Memo. 1982-581. As to the award of reasonable litigation costs, the matter is not properly before the Court at this time. See Rule 231(a)(2)(i), Tax Court Rules of Practice and Procedure.↩ In any event, we would be unable to find on this record that petitioner had either "exhausted the administrative remedies available" as required by sec. 7430(b)(2) or "establish[ed] that the position of the United States in the civil proceeding was unreasonable", as required by sec. 7430(c)(2)(A)(i).